UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ALAN M. OUTMAN

                Petitioner,

v.                                              9:16-CV-788
                                               (MAD)

SUPERINTENDENT,
Five Points Correctional Facility
                Respondent.

---

APPEARANCES:                              OF COUNSEL:

ALAN M. OUTMAN
12-B-3915
Petitioner, Pro Se
Five Points Correctional Facility
Caller Box 119
Romulus, New York 14541

HON. ERIC T. SCHNEIDERMAN      ALYSON J. GILL
Attorney for Respondent               Assistant Attorney General
Office of the Attorney General
120 Broadway
New York, New York 10271

MAE A. D'AGOSTINO
United States District Judge

## DECISION and ORDER

**I.    INTRODUCTION**

On June 20, 2016, petitioner Alan M. Outman ("petitioner") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, along with exhibits. Dkt. No. 1, Petition ("Pet."); Dkt. No. 1-1, Exhibits.[1]

---

[1] The cited page numbers for the petition and exhibits refer to those generated by the Court's electronic filing system ("ECF").

On December 14, 2012, petitioner was convicted after a plea of guilty in Broome County Court, of one count of murder in the first degree. Pet. at 1. As a result of her conviction, petitioner was sentenced to twenty-five years to life in prison. *Id.*[2]

Petitioner's guilty plea and conviction stems from petitioner's actions during the early morning hours of January 1, 2012, when she attempted to sexually abuse David Fillers. Petitioner then killed Fillers by choking and hitting him on the head with a rock several times, ostensibly to prevent him from calling the police. Fillers' body was discovered in a culvert where petitioner left him to die, and petitioner's DNA was recovered from sperm located on the victim's body.

Petitioner raises the following grounds for habeas relief: (1) her guilty plea was involuntary, and (2) her trial counsels were ineffective because they coerced her into pleading guilty. Pet. at 3-5.[3]

Respondent opposes the petition, arguing the habeas petition is untimely, partially unexhausted and without merit. Dkt. No. 17, Respondent's Memorandum of Law in Opposition ("Resp. Mem."); Dkt. No. 18, State Court Records ("SR"). Petitioner filed a reply. Dkt. No. 22.[4]

For the reasons that follow, the petition is denied as untimely, and dismissed.

---

[2] In her state court submissions, as well as her reply papers, petitioner identifies as transgender and uses feminine pronouns to refer to herself. As such, this Court will refer to petitioner using female pronouns.

[3] Although petitioner raised additional claims of ineffective assistance of counsel in her petition, she withdrew these claims in her reply to this Court. *see* Dkt. No. 22, Petitioner's Reply, at 3. As such, this Court deems the claims abandoned.

[4] The cited page numbers for Respondent's Memorandum of Law (Dkt. No. 17) and Petitioner's Reply/Traverse (Dkt. No. 22) refer to those generated by the court's electronic filing system. The "SR" page numbers for the State Court Records filed at Docket Number 18 appear at the bottom center of each page.

## II. BACKGROUND AND PROCEDURAL HISTORY

### A. Petitioner's Guilty Plea and Sentencing

Petitioner was charged by a Broome County grand jury with one count of Murder in the First Degree (Penal Law § 125.27(1)(a)(vii)), two counts of Murder in the Second Degree (Penal Law § 125.25(1), (3)), and one count of Sexual Abuse in the First Degree (Penal Law § 130.65(1)). Dkt. No. 18-1, at SR 1-4.

On September 5, 2012, petitioner, her attorney and the prosecution met for a Question and Answer session in contemplation of petitioner pleading guilty. *Id.* at SR 6-24. Prior to questioning petitioner, the prosecution informed her that "nothing that you say in these statements can be used against you." *Id.* at SR 6. The prosecution went on to outline the terms of the proposed plea agreement. Petitioner was offered a plea of guilty to first-degree murder in exchange for a prison term of twenty-five (25) years to life in prison. In addition, petitioner would waive all of her rights to have any pre-trial motions litigated as well as her rights to appeal. *Id.* at SR 6-7. Petitioner was then asked to give a full account of what happened the night of the victim's death. *Id.* at SR 7.

Petitioner stated that she had known Fillers since middle school, and that she ran into him during the early morning hours on New Year's day in 2012, in downtown Binghamton. *Id.* at SR 7-8, 11. According to petitioner, Fillers was intoxicated. Petitioner offered to let Fillers ride in a cab she was sharing with a friend. Although Fillers asked the cab driver to take him home, the driver said he had other fares and Fillers would have to be dropped off at the Quality Inn where petitioner and her friends were staying. *Id.* at SR 11-14.

After arriving at the hotel, Fillers and petitioner talked in the lobby for some time and then went back outside to wait for a cab to pick Fillers up. While walking outside, petitioner

3

told Fillers that she was attracted to him. *Id.* at SR 14-15. Petitioner attempted to seduce Fillers, but he continued to say he was not interested. At one point, petitioner tried to kiss Fillers, but he pushed her away. As he pushed her away, petitioner stated that Fillers "slipped on the wet grass and fell backwards down the embankment" and "hit his head." Petitioner followed Fillers down the embankment and said he "seemed out of it." *Id.* at SR 15-16.

At that point, petitioner admitted removing Fillers' clothing "with the intent of having sexual contact." *Id.* at SR 17. Petitioner then removed her own clothing and tried to put on a condom, but it did not fit. She then attempted to have anal intercourse with Fillers, but could not penetrate him. Petitioner stated that Fillers was still "out of it," but he attempted to "move away or push back with his legs." *Id.* at SR 18. Petitioner ultimately masturbated and ejaculated on Fillers' inner thigh. *Id.* at 19.

According to petitioner, Fillers soon became more coherent and began yelling that petitioner had raped him. Fillers tried to push past petitioner and stated that the "first chance he had he was going to call the police." *Id.* at SR 20. Petitioner then grabbed a rock she saw on the ground and "turned around and struck [Fillers] in the head." *Id.* The two started grappling with each other, and petitioner put Fillers in a headlock to subdue him. Petitioner then struck Fillers two more times in the head with the rock, at which point Fillers stopped moving. *Id.*

Petitioner then took Filler's t-shirt and used it to drag him by the wrist into a culvert, where she left him to die in the water. *Id.* at SR 22. Petitioner hid Fillers clothing, and then lied to the police the following day about when she had last seen him. *Id.* at SR 22-23.

After the Question and Answer session, petitioner appeared in trial court with her

4

counsel to plead guilty to murder in the first degree. The prosecution explained that petitioner had agreed to the plea in exchange for a sentence of twenty-five years to life in prison. The prosecution also reiterated petitioner's agreement to withdraw all of her pending pre-trial motions, as well as her right to appeal, which was memorialized in a written agreement. *Id.* at SR 26-28.

Petitioner's counsel told the trial court that he had discussed with petitioner the rights and privileges she was giving up by entering the plea. *Id.* at SR 28-29. Petitioner then told the trial court that she wished to proceed with entering a plea of guilty. *Id.* at SR 29. The trial court questioned petitioner to ensure she understood the rights she was giving up by pleading guilty, including her right to any pre-trial hearings, her right to a jury trial, the right confront witnesses or to testify on her own behalf. *Id.* at SR 29-30. Petitioner stated she was not threatened or forced into pleading guilty, and was entering the plea "freely and voluntarily." *Id.* at SR 30-31. In response to the trial court's questions, petitioner stated that she had conferred with her counsel and was "satisfied with his services." *Id.* at SR 31. Petitioner acknowledged that by pleading guilty, she was admitting that she intentionally caused the death of Fillers on January 1, 2012, while committing or attempting to commit sexual abuse in the first degree. *Id.* at SR31-32. Petitioner then went on to give an account of the events leading up to Fillers' death, which was consistent with the answers provided to the prosecution earlier that day. *Id.* at SR 32-44. The trial court accepted petitioner's plea of guilty to murder in the first degree. *Id.* at SR 44.

On December 14, 2012, petitioner appeared with new counsel before the trial court for sentencing. The trial court explained that petitioner was assigned a new counsel after petitioner expressed her intent to withdraw her guilty plea. *Id.* at SR 52-53. Petitioner's new

5

counsel then stated that after several meetings, and hours of discussion with petitioner, she had decided not to withdraw her plea. *Id.* at SR 53.

The trial court sentenced petitioner, as agreed, to twenty-five (25) years to life in prison. The trial court also addressed petitioner's waiver of her right to appeal. *Id.* at SR 79-81. The written waiver, signed by petitioner on September 5, 2012 and submitted to the trial court, stated that petitioner had knowingly and voluntarily waived her right to appeal from the conviction and sentence. *Id.* at SR 81, 92-93.

**B. Petitioner's Motion to File a Late Notice of Appeal and Post-Conviction motions**

On May 19, 2014, petitioner filed an application in the Appellate Division, Third Department, to file a late notice of appeal. *Id.* at SR 83-89. The motion was denied on July 17, 2014. *Id.* at SR 105.

On August 14, 2014, petitioner filed a motion in the Appellate Division, Third Department, for a writ of error coram nobis, on the ground that her two trial attorneys provided ineffective assistance of counsel. *Id.* at SR 106-114. On November 7, 2014, the motion was denied. *Id.* at SR 206.

On April 13, 2015, petitioner moved before the trial court to vacate the judgment pursuant to C.P.L. § 440.10. *Id.* at SR 214-235. In a Decision and Order, dated April 1, 2016, the trial court rejected petitioner's motion. *Id.* at SR 379-382. Petitioner then sought leave to appeal, which the Appellate Division denied on June 14, 2016. *Id.* at SR 383-393.

**III. DISCUSSION**

**A. The Petition is Time Barred**

6

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year statute of limitations for prisoners to seek federal review of their state court criminal convictions. 28 U.S.C. § 2244(d)(1). The one-year period generally begins to run from the date on which the state criminal conviction became final by the conclusion of direct review or by the expiration of the time to seek direct review. 28 U.S.C. § 2244(d)(1)(A);[5] *Gonzalez v. Thaler*, __ U.S. __, 132 S. Ct. 641, 652-53 & n. 9 (2012).

In this case, petitioner's conviction became "final" for AEDPA purposes, on January 13, 2012, when the thirty-day time period to file a notice of appeal had expired. *see* C.P.L. § 460.10(1); *Bethea v. Girdich*, 293 F.3d 577, 578 (2d Cir. 2002). Therefore, under Section 2244, petitioner had one year from that date, or until January 13, 2014, to file a habeas petition. *Bethea*, 293 F.3d at 578; *Williams v. New York State Div. of Parole*, No. 9:10-CV-1533 (GTS/DEP), 2011 WL 8201684, *3 (N.D.N.Y. Nov. 29, 2011).

Petitioner did not file the instant application until June 20, 2016: 2 years, 5 months and 7 days after the statute of limitations expired. Pet. at 1. Therefore, the habeas petition is untimely unless petitioner: (1) properly filed and had a pending state application for collateral review, or (2) she demonstrates other grounds for equitable tolling. *See* 28 U.S.C. 2244(d); *Joseph v Conway*, 567 F. App'x 56, 59 (2d Cir. 2014). Petitioner has not made either showing.

**1. Statutory Tolling**

---

[5] Other dates from which the limitations period may start running are the date on which an unconstitutional, state-created impediment to filing a habeas petition is removed, the date on which the constitutional right on which the petitioner bases her habeas application was initially recognized by the Supreme Court, if the right was newly recognized and made retroactively applicable, or the date on which the factual predicate for the claim or claims presented could have been discovered through the exercise of due diligence (newly discovered evidence). 28 U.S.C. § 2244(d)(1)(B)-(D). None of the bases for a later date upon which the statute of limitations could have begun to run apply in this case.

The one-year limitation period under AEDPA is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); *Saunders v. Senkowski*, 587 F.3d 543, 548-49 (2d Cir. 2009). The tolling provision "excludes time during which properly filed state relief applications are pending, but does not reset the date from which the one-year statute of limitations begins to run." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam). The tolling provision excludes from the limitations period only the time that the state relief application remained undecided, including the time during which an appeal from the denial of the application was taken. *Saunders*, 587 F.3d at 548; *McGinnis*, 208 F.2d at 16.

Here, petitioner's motion to file a late notice of appeal, dated May 19, 2014, was filed over four months after the statute of limitations had expired, and did not restart the one-year limitations period. *Bethea*, 293 F.3d at 577-78 ("[W]e hold that the filing of a motion to extend the time to appeal or to file a late notice of appeal does not 'restart' the AEDPA limitation period.").

Similarly, both of petitioner's post-conviction motions, filed August 14, 2014 and April 13, 2015, were filed after the one-year statute of limitations period expired. Consequently, none of petitioner's motions filed after her conviction became final tolled the statute of limitations. 28 U.S.C. § 2244(d)(2); *Saunders*, 587 F.3d at 548-49.

**2. Equitable Tolling**

The AEDPA's one-year statute of limitations period is subject to equitable tolling only in "appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010); *see also Martinez v. Superintendent of E. Corr. Facility*, 806 F.3d 27, 31-32 (2d Cir. 2015) (holding equitable tolling is available "in certain 'rare and exceptional circumstances.'") (quoting *McGinnis*, 208

8

F.3d at 17). To warrant equitable tolling, a petitioner must show "'(1) that [she] has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way' and prevented timely filing." *Holland*, 560 U.S. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *Martinez,* 806 F.3d at 31-32.

The standard for evaluating a claim of extraordinary circumstances is one that focuses not on "the uniqueness of a party's circumstances," but instead on "the severity of the obstacle impeding compliance with a limitations period." *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011); *see Diaz v. Kelly*, 515 F.3d 149, 154 (2d Cir. 2008) (whether a circumstance is extraordinary depends on "how severe an obstacle it is for the petitioner endeavoring to comply with the AEDPA's limitations period."). The petitioner must show not only that extraordinary circumstances existed, but that those circumstances "caused [her] to miss the original filing deadline." *Harper*, 648 F.3d at 137.

Moreover, a petitioner must have acted with "reasonable diligence throughout the period [she] seeks to toll[.]" *Id.* at 138 (quoting *Belot v. Burge*, 490 F.3d 201, 205 (2d Cir. 2007)). If a petitioner did not exercise reasonable diligence after the extraordinary circumstance began, "the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." *Baldayaque*, 338 F.3d 145, 150 (2d Cir. 2003) (quoting *Hizbullahankhamon v. Walker*, 255 F.3d 65, 75 (2d Cir. 2001)).

Here, petitioner argues in her reply that she is entitled to equitable tolling. Dkt. No. 22, Pet. Reply, at 2-3. Specifically, petitioner maintains that shortly after sentencing, "in early January 2013," she requested a copy of her file from her former counsel. Petitioner states she received the file in "late August 2013." *Id.* However, due to safety concerns including

9

"self-harm" and "a sexual assault committed against" her, petitioner states that she spent time in "protective custody," "administrative segregation," "several days in an outside hospital," and "extended assignment to a mental health" observation cell. Pet. Reply, at 2. As a result, petitioner claims she "could not review the case records due to psychological inability and lack of access." Petitioner nevertheless goes on to state that she reviewed the documents obtained by her counsel and "discovered the factual predicate [for her claims] in late December 2013." *Id.*

The Second Circuit has held that a petitioner's mental illness can constitute extraordinary circumstances justifying the equitable tolling of the AEDPA statute of limitations. *Bolarinwa v. Williams,* 593 F.3d 226, 231 (2d Cir. 2010). Whether a petitioner's mental illness constitutes extraordinary circumstances warranting equitable tolling is a highly case-specific inquiry. *Id.* at 232 (citation and internal quotation marks omitted); *see also Victorial v. Burge*, 477 F.Supp. 2d 652, 654-55 (S.D.N.Y. 2007) ("The Second Circuit adheres to a case specific approach" and has not developed a "bright line rule in determining when equitable tolling should apply in cases of mental illness"). The "burden of demonstrating the appropriateness of equitable tolling for mental illness lies with the [petitioner]"; in order to satisfy the burden, "she must offer a 'particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights.'" *Bolarinwa*, 593 F.3d at 231 (quoting *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000)). In sum, "a habeas petitioner must demonstrate that her particular disability constituted an 'extraordinary circumstance' severely impairing her ability to comply with the filing deadline, despite her diligent efforts to do so." *Id.*

Petitioner has not met her burden of demonstrating her entitlement to equitable tolling.

10

Evidence of mental illness during the AEDPA's one-year filing period is critical to a viable equitable tolling argument. *See, e.g., Rios v. Mazzuca*, 78 F. App'x 742, 745 (2d Cir. 2003) (no equitable tolling where petitioner with history of schizophrenia and antisocial personality disorder was unable to show illnesses prevented timely filing of petition); *Victorial*, 477 F.Supp. 2d at 655 (no equitable tolling where petitioner failed to show how bipolar disorder prevented him from filing petition "during the year in which he was to file his petition"); *see also Smith v. Annucci*, No. 13-CV-00454 - JKS, 2014 WL 2215765, at * 3 (N.D.N.Y. May 29, 2014) (equitable tolling not permitted where petitioner's mental health documentation "[does] not portray [petitioner] as being incapable of rational thought or lacking the wherewithal to ascertain what legal steps he needed to take."); *Boyd v. United States,* No. 13-CV-5572, 2013 WL 6081701, at * 5 (E.D.N.Y. Nov. 19, 2013) (equitable tolling not permitted where medical documentation did not show petitioner was incapacitated in a way that would prevent filing of habeas petition).

Despite petitioner's contentions that she was confined for a considerable period of time and "could not review the case records due to psychological inability," she does not attach any medical records, Department of Corrections and Community Supervision (DOCCS) records, Office of Mental Health records, or any other evidence to support her claim that she was psychologically unable to comply with the filing deadline. In fact, petitioner does not identify when she was confined, where she was confined, or how her alleged mental health status prevented her from pursuing her rights or filing a habeas petition. Therefore, the Court finds, based on the evidence before it, that petitioner has failed to satisfy her burden of demonstrating that her "particular disabilit[ies] constituted an 'extraordinary circumstance' severely impairing her ability to comply with the filing deadline." *Bolarinwa*, 593 F.3d at 231.

11

Moreover, petitioner has not demonstrated that she acted with reasonable diligence throughout the period she seeks to toll. *See Bolarinwa*, 593 F.3d at 231; *Valverde*, 224 F.3d at 134. To be sure, petitioner acknowledges she received her case file in "late August 2013." Pet. Reply, at 2. At that point, petitioner had considerable time left before the statute of limitations expired on January 13, 2014. Petitioner has provided no information regarding any efforts she took to timely file a petition, thereby breaking any causal link between her alleged extraordinary circumstances and her failure to timely file. *Baldayaque*, 338 F.3d at 150.

In light of the foregoing, the Court finds that petitioner is not entitled to equitable tolling.

### 3. Actual Innocence

Courts have also recognized an equitable exception to the one-year statute of limitations under 28 U.S.C. §2244(d)(1) in cases where a petitioner can prove actual innocence. *McQuiggin v. Perkins*, __ U.S. __, 133 S. Ct. 1924, 1928, 1931 (2013). The Supreme Court has cautioned, however, that "tenable actual-innocence gateway pleas are rare[.]" *McQuiggin*, 133 S. Ct. at 1928. To be successful, petitioners asserting innocence as a gateway to federal habeas review when the statute of limitations has expired must establish that, "in light of the new evidence, no juror acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 1928 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)); *see House v. Bell*, 547 U.S. 518, 536-37 (2006). This standard "is demanding and permits review only in the 'extraordinary' case." *House,* 547 U.S. at 538 (quoting *Schlup*, 513 U.S. at 327) (further citations omitted).

Here, petitioner makes no claim of actual innocence in her petition, and has not

12

identified any new evidence to support a credible claim of actual innocence which would warrant considering this otherwise time-barred petition. *McQuiggin*, 133 S. Ct. at 1928, 1931. The petition is therefore denied and dismissed.[6]

**V.    CONCLUSION**

**WHEREFORE**, it is hereby

**ORDERED** that the petition, Dkt. No. 1, is **DENIED AND DISMISSED**; and it is further

**ORDERED** that no Certificate of Appealability ("COA") shall issue because petitioner failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires.[7]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals (Fed. R. App. P. 22(b)); and it is further

---

[6] Even if the petition were timely, no relief would issue.  Petitioner did not file a direct appeal in this matter; therefore, any claim that her plea was not knowing and voluntary is unexhausted.  28 U.S.C. § 2254(b), (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (A petitioner seeking federal habeas relief must raise all claims in state court prior to raising them in the habeas corpus petition, and [she] must "fairly present" each federal claim in the appropriate state court, "thereby alerting that court to the federal nature of the claim").  Since this claim is record-based, it is also procedurally barred, and petitioner has failed to show cause for failing to timely file a direct appeal of this issue.  *Maples v. Thomas*, __U.S.__, 132 S. Ct. 912, 922 (2012); *Coleman v. Thompson,* 501 U.S. 722, 753 (1991).

Furthermore, petitioner's ineffective assistance of counsel claim only survives to the extent petitioner is attacking "the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." *Blackledge v. Perry,* 417 U.S. 21, 29-30 (1974).  After reviewing the record, the Court finds petitioner has not demonstrated deficient performance by her counsels, or prejudice as a result, and is therefore not entitled to habeas relief.  Petitioner has only offered conclusory allegations as proof that her plea and waiver of her right to appeal were the results of threats and coercion, or the withholding of exculpatory evidence by counsel.  Moreover, her allegations are directly contradicted by her statements during the plea colloquy.  Therefore, the state court's rejection of petitioner's ineffective assistance of counsel claim relating to her guilty plea was not contrary to, or an unreasonable application of Supreme Court precedent.  *Strickland v. Washington*, 466 U.S. 668 (1984).

[7] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *See Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that, if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, and (2) that the applicant has established a valid constitutional violation" (citation omitted)).

**ORDERED** that the Clerk serve copies of this Decision and Order upon the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: January 23, 2017
      Albany, New York

_Mae A. D'Agostino_
U.S. District Judge